UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-cr-40085-JPG |
| KOREY B. ALEXANDER, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a Motion for Compassionate Release. (Doc. 1014). The defendant, Korey B. Alexander, filed the motion on December 26, 2023. The Court **DENIES** the motion.

I. **BACKGROUND**

On June 24, 2020, Korey Alexander pled guilty to one count of conspiracy to distribution of methamphetamine. (Docs. 318, 339). Alexander was sentenced to 240 months in prison. (Doc. 339). Alexander petitioned the Warden for compassionate release, but was denied. Following that denial, Alexander filed his motion for compassionate release on December 26, 2023.

In his motion, Alexander states that he is suffering from end-stage renal failure, in addition to diabetes and high blood pressure. He argues that the medical conditions he suffers from qualify as terminal and warrant compassionate release. (Doc. 1014). Alexander writes that he "is currently dependant [sic] on several medications daily, receives dialysis three times per week for 4 hours each sessions [sic], consultants [sic] with [a] kidney specialist once a month, and monitores [sic] by a P.A. regularly . . . . due to his terminal illness (Kidney Disease) he is

now <u>disabled</u>." (*Id.*).

On February 16, 2024, the Government responded to Alexander's motion, opposing compassionate release. (Doc. 1032). In their response, the Government states that the Warden, in denying his petition for compassionate release, found that while Alexander suffers from chronic medical issues, he "does not have a debilitating medical condition that leaves him disabled or capable of only limited self-care. . . . [the] defendant lives on an ambulatory unit and is able to care for himself and needs no assistance with his activities of daily living." (*Id.*). The Government reiterates Alexander's treatment plan and writes that "[c]ontrary to his claims, [Alexander] is receiving appropriate medical care in the Bureau of Prisons . . . . [his] medical issues are being actively treated by BOP. Moreover, [he] currently lives in an ambulatory unit . . . . which provides him with easy access to medical care." (*Id.*). Furthermore, the renal disease Alexander is suffering currently existed at the time of his sentencing. (*Id.*) (Doc. 311).

The Government also argues that, even if Alexander did qualify for compassionate release, the § 3553(a) factors weigh against compassionate release. Not only was Alexander "engaged in a significant and substantial drug trafficking conspiracy, and the nature and circumstances of his offense are, and remain, quite serious." (Doc. 1032). Additionally, Alexander has only served 17% of his sentence.

## II.   LEGAL STANDARD

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C.

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

§ 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).  The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other

person or to the community. U.S.S.G. § 1B1.13(a)(2).[2] The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.—**
>> **(A)** The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> **(B)** The defendant is—
>>> **(i)** suffering from a serious physical or medical condition,
>>> **(ii)** suffering from a serious functional or cognitive impairment, or
>>> **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>> **(D)** The defendant presents the following circumstances—
>>> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>>> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>>> **(iii)** such risk cannot be adequately mitigated in a timely manner.
>
> . . . .
> **(5) Other Reasons.**—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b) (2023).  For a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1)

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."
[3] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13.

### III.   ANALYSIS

Alexander suffers from diabetes and high blood pressure; however, neither of those conditions are untreatable by the BOP, nor are they extraordinary or compelling reasons for compassionate release. Alexander believes end-stage renal disease qualifies for compassionate release based on the fact that, in U.S.S.G. § 1B1.13(b)(1)(A), "end-stage organ disease" is provided as a specific example warranting compassionate release.

While Alexander is correct that "end-stage organ disease" is listed in the Guidelines as an example of a qualifying illness, he has stripped that example of its context. "[E]nd-stage organ disease" is not an example, in and of itself, of a class of medical conditions warranting compassionate release; rather, "end-stage organ disease" describes a class of conditions that would show the "defendant is suffering from a *terminal* illness," *Id.* (emphasis added), and it is that *terminal* illness that warrants compassionate release. The other examples listed beside it illustrate the gravity of the illness required: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS) . . . and advanced dementia." *Id.*

The term "end-stage organ disease" covers a broad swathe of illnesses, some more serious than others, and not all are necessarily terminal. End-stage heart, brain, and liver diseases are just a few examples of illnesses that are more likely to be terminal. End-stage kidney disease

is certainly a form of organ disease, but end-stage kidney disease may not *necessarily* be terminal—and that is the criteria for evaluating a compassionate release motion. Therefore, the key question here is *not* whether Alexander suffers from end-stage renal disease—that is beyond dispute—the question is whether that *form* of end-stage organ disease, *specifically* in Alexander's case, is a "terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)"; *Id.*, the Court finds that it is not.

Undoubtedly, end-stage renal disease is "a serious and advanced illness," but—at least in Alexander's case, at this moment in time—it is not terminal, nor does it have an "end-of-life trajectory." *Id.* This is unlike some other organ diseases such as end-stage heart disease, to name just one other example, that would likely be terminal. Kidney disease can be treated through dialysis. While dialysis will not cure kidney disease, it prevents kidney disease from becoming terminal.

Currently, Alexander's medical records show he is at stage 4 chronic renal disease and has been at stage 4 since at least April of 2021. *Compare* (Doc. 1032, Ex. 2 at 36) *with* (Doc. 1032, Ex. 3 at 15). It would be one thing if Alexander was showing signs that his kidney disease has advanced to stage 5, but Alexander's medical records indicate that "he has [a] 'good energy level and appetite' and is able to exercise by walking." (Doc. 1032) (quoting Doc. 1032, Ex. 3). He has also been able to care for himself and perform basic life functions without assistance. (Doc. 1032) (citing Doc. 1032, Ex. 1). These are not the signs that Alexander's kidney disease has advanced to a terminal illness. As evidenced by the fact his condition has not progressed to stage 5, clearly the BOP has furnished Alexander with sufficient care to prevent his condition from deteriorating further for the past three years; there is no indication that the care he has received or is currently receiving is inadequate.

Moreover, as demonstrated by the record in this case, and by Alexander's own words, he is provided with "several medications daily, receives dialysis three times per week for 4 hours each sessions [sic], consultants [sic] with [a] kidney specialist once a month, and monitores [sic] by a P.A. regularly." (Doc. 1014). Not only is Alexander provided with adequate medical care, the suite of medical care that he is receiving would be the envy of many civilians with even the best health insurance. Currently, Alexander has a healthy appetite and does not report pain associated with his condition; there is no indication that the treatment he is receiving is in any way contributing to a deteriorating condition—in fact, but for the BOP's medical care, Alexander's condition would significantly deteriorate. Were Alexander to be released, the Court finds it unlikely that he could afford the exorbitant costs of his condition—medication, tri-weekly dialysis, regular monitoring by a P.A., and monthly meetings with a kidney specialist—or find employment that would provide sufficient insurance to maintain his care.[4]

Ultimately, the goal of compassionate release for medical circumstances is to allow inmates to seek the care they require outside the BOP to improve their condition in a way that the BOP is incapable of offering, or alternatively, allowing inmates the comfort of spending their final moments outside prison. Here, not only is BOP care more than adequate but—were the Court to release Alexander early—rather than facilitating treatment that he requires yet is unable to receive; the Court would, in reality, be taking Alexander's treatment away, *making* his condition terminal. Alexander either does not understand this or fails to fully appreciate it. Be that as it may, releasing Alexander in his current state, with no alternative medical care, would be far from compassionate. Should Alexander's condition deteriorate to a terminal stage, then he may petition for compassionate release again at that point and the Court will reevaluate, but as

---

[4] Alexander did not complete high school and has not received a GED certification. (Doc. 300). This limits his employment options which, in turn, limits his ability to receive adequate health insurance through an employer.

things stand, Alexander has failed to show that his medical conditions qualify as extraordinary and compelling reasons for compassionate release.

Setting Alexander's condition aside, even were Alexander to show that he could receive the same or better medical care outside BOP custody and that the care he was receiving was inadequate in some way, the § 3553(a) factors weigh against granting release. Not only has Alexander served less than a fifth of his sentence but he played a significant role in the conspiracy that led to his conviction. For those reasons as well, Alexander has failed to show he should receive compassionate release.

## IV. CONCLUSION

Finding that Korey Alexander has failed to establish extraordinary and compelling reasons for compassionate release and failed to show that the § 3553(a) factors do not weigh against release, the Court hereby **DENIES** his motion for compassionate release. (Doc. 1014).

**IT IS SO ORDERED.**
**DATED:  October 7, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**